# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3445 | **DATE** | 3/25/2003 |
| **CASE TITLE** | Lumenite Control Technology, Inc. vs. Elizabeth Jarvis | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 5/30/03 at 10:00 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order granting plaintiff's motion for summary judgment on count III of defendant's counterclaim (43-1) and denying plaintiff's motion for summary judgment (41-1), defendant's motion for summary judgment on count II of her counterclaims, defendant's motion for summary judgment on plaintiff's complaint, and defendant's cross-motion for summary judgment on count III of her counterclaims. Plaintiff's motion in limine to exclude any theory of liability by Arthur A. Eubank is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

| | | |
|---|---|---|
| MPJ | courtroom deputy's initials | |

2 number of notices

MAR 2 6 2003 date docketed

docketing deputy initials

3/25/2003 date mailed notice

MPJ mailing deputy initials

**Document Number**

83

CLERK U.S. DISTRICT COURT

03 MAR 25 PM 5: 18

Date/time received in central Clerk's Office

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LUMENITE CONTROL TECHNOLOGY, INC., )
                                       )
          Plaintiff, )
                                        )
   v.                                )
                                        )   No. 01 C 3445
ELIZABETH JARVIS,                 )
                                        )
          Defendant.         )

DOCKETED

MAR 2 6 2003

## MEMORANDUM OPINION AND ORDER

Defendant Elizabeth Jarvis worked for Plaintiff Lumenite
Control Technology, Inc. ("Lumenite") from September 1992 until she
resigned in March 1999, during which time she accrued pension
benefits under an employee benefit plan ("Plan"). Lumenite was
both fiduciary and administrator of the Plan. In May 1999, Ms.
Jarvis executed a distribution request form and received a
disbursement of benefits from Lumenite in the amount of $13,877.74.
In January 2000, Ms. Jarvis received another distribution request
form. She executed and returned this second request form, and an
additional $22,270.64 was disbursed to her. Ms. Jarvis states that
she requested, but never received, documentation regarding her
pension account and how the amounts disbursed were calculated.
Lumenite states that the amount transferred in January 2000 was in
error, and that only $7,930.09 should have been sent. Lumenite
requested that Ms. Jarvis return the $14,340.55 balance, which she
has not done. Lumenite brought suit in Illinois state court to



recover the alleged overpayment.

Ms. Jarvis removed the suit to federal court and brought a counterclaim, stating that she has yet to receive a proper accounting of the exact amount of benefits that she accrued under the Plan. Count I of her counterclaim seeks injunctive relief to compel Lumenite to provide the requested information, count II seeks statutory penalties for failing to provide the information, and count III claims that Lumenite breached its fiduciary duties to Ms. Jarvis by "engaging in the conduct described [in counts I and II]." Before me now are cross-motions for summary judgment on Lumenite's complaint and count III of Ms. Jarvis' counterclaim, as well as a motion by Ms. Jarvis for summary judgment on count II of her counterclaim. In addition, Lumenite has filed a motion *in limine* to exclude evidence relating to one of Ms. Jarvis' expert witnesses. I deny both cross-motions for summary judgment on Lumenite's complaint, deny Ms. Jarvis' motion for summary judgment on count II of her counterclaim, and grant Lumenite's motion for summary judgment on count III of Ms. Jarvis' counterclaim (and therefore deny Ms. Jarvis' motion for summary judgment on that count). Additionally, I grant Lumenite's motion *in limine* to exclude certain evidence.

## I. Lumenite Complaint

Lumenite seeks restitution of the alleged overpayment it made to Ms. Jarvis. It proceeds under section 1132(a)(3)(B) of ERISA,

2

which states that a civil action may be brought by a plan fiduciary "to obtain other appropriate equitable relief" to redress violations of the ERISA statute, to enforce ERISA provisions, or to enforce terms of the plan. 29 U.S.C. § 1132(a)(3)(B). Ms. Jarvis argues that the restitution remedy sought does not qualify as "other appropriate equitable relief" under section 1132(a)(3)(B), and that Lumenite is thus precluded from proceeding under that section.

A. "Other Appropriate Equitable Relief"

The Supreme Court recently reexamined the meaning of the phrase "other appropriate equitable relief" in *Great-West Life & Annuity Ins. Co. v. Knudson,* 534 U.S. 204 (2002). In that case, the Court reiterated a previous ruling that the term "equitable relief" in § 1132(a)(3) must mean something less than all relief, and in fact, it refers to "those categories of relief that were typically available in equity." *Id.* at 209-10 (quoting *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 256 (1993) (emphasis removed)). The Court went on to say that "not all relief falling under the rubric of restitution is available in equity." *Great-West Life,* 534 U.S. at 212. Whether restitution is a legal or equitable remedy (and consequently whether it falls under § 1132(a)(3)) is determined on a case-by-case basis depending on the basis of the plaintiff's claim and the nature of the underlying remedy sought. *Id.* at 213. When a plaintiff cannot assert title or right to possession of

3

particular property but can nevertheless show grounds for recovering money to pay for some benefit that the defendant has received from him, restitution is a legal remedy. *Id.* On the other hand, when money or property belonging to the plaintiff can clearly be traced to particular funds or property in the defendant's possession, restitution is an equitable remedy, generally taking the form of a constructive trust or an equitable lien. *Id.* "Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." *Id.* at 214.

Here, Lumenite does not seek to impose personal liability on Ms. Jarvis, it simply seeks to recover the particular funds that it allegedly overpaid to Ms. Jarvis. Ms. Jarvis argues, however, that she no longer has the alleged overpayment, and that Lumenite cannot trace the alleged overpayment to any particular funds or property currently in her possession. It is undisputed that the alleged overpayment was disbursed into an IRA created by Ms. Jarvis. Lumenite contends that the money in the IRA was used to make a down payment on a house, and that the overpayment is thus traceable to the house.

Both the May 1999 and the January 2000 disbursements were paid into the IRA. However, because only a portion of the January 2000 payment is in dispute, the IRA contained both the alleged

4

overpayment as well as money that undisputedly belonged to Ms. Jarvis. Where a single account contains money to which the account holder is entitled as well as money that rightfully belongs to another person, the rightful owner is entitled to a lien on the commingled fund in the amount of his own monies traceable to it. 2 Dan B. Dobbs, Law of Remedies § 6.1(4) (2d ed. 1993). When that fund is used in its entirety to purchase property, the other person is entitled to a constructive trust for a share of the property proportionate to his share of the fund. *Id.*

Here, while the record is unclear, it certainly supports a finding that the entire IRA fund was used as a down payment for Ms. Jarvis' house. When asked in her deposition "What happened to the money in your IRA?" Ms. Jarvis answered "I used it to buy my home." (Jarvis Dep. at 86.) Ms. Jarvis states that she paid $10,012 in federal taxes and penalties when she cashed out her IRA.[1] (Def.'s Statement of Facts ¶ 210.) The citations she makes to the record, however, do not indicate whether this amount was paid out of the IRA or out of other sources. Even if this amount had been paid out of the IRA (and thus the entire fund was not used for the down payment), the alleged overpayment could still be

_____

[1] The characterization of the $10,012 figure as payment of taxes is slightly disputed. Lumenite states that the record cited by Ms. Jarvis supports a conclusion that Ms. Jarvis paid $9,549 in federal taxes and forwent a $463 refund as a result of cashing out her IRA. (Def.'s Resp. to Pl.'s Statement of Facts ¶ 210.) Nevertheless, it is undisputed that Ms. Jarvis paid approximately $10,000 in federal taxes as a result of cashing out her IRA.

traced in its entirety to the house under various theories of tracing. *See* 2 Dobbs § 6.1(4) at 18-22 (describing tracing theories such as "first in, first out" and the Hallett Rule, which could potentially be used to show that any taxes and penalties paid out of the IRA were paid out of Ms. Jarvis' portion of the funds).

Further, even if Ms. Jarvis used other funds in addition to the IRA to make the down payment on her house[2], the ability to trace the alleged overpayment to the house would not be affected. The proportionate share rule for commingled funds could be applied again, treating the down payment as a single "account." If the alleged overpayment constituted 50% of the IRA funds, and the IRA funds constituted 50% of the down payment, Lumenite, if entitled to restitution of the alleged overpayment, would have a constructive trust for a 25% share of the down payment. If the down payment was 20% of the home purchase price, Lumenite would have a constructive trust in 5% of the home. Because the alleged overpayment is potentially traceable to Ms. Jarvis' home, and if so, Lumenite could seek a constructive trust in a share of it,[3] this action can be considered one for equitable relief. Lumenite may thus proceed

---

[2] Ms. Jarvis makes such a claim (Def.'s Resp. to Pl.'s Statement of Facts ¶ 36; Def.'s Statement of Facts ¶ 211), although it is unsupported by the record.

[3] I have "a full panoply of equitable powers to fashion appropriate relief" in ERISA cases, which includes the imposition of constructive trusts. *Cummings v. Briggs & Stratton Retirement Plan,* 797 F.2d 383, 390 (7th Cir. 1986).

under § 1132(a)(3)(B).

## B. Overpayment

The question then becomes whether there was actually an overpayment, and if so, for how much. It is undisputed that at the end of 1998, Ms. Jarvis was vested in $22,270.64 in her Plan account. (Def.'s Resp. to Pl.'s Statement of Facts ¶ 38.) She left Lumenite in March 1999. (Def.'s Resp. to Pl.'s Statement of Facts ¶ 24). In May 1999, $13,877.74 was disbursed to Ms. Jarvis' IRA. (Def.'s Resp. to Pl.'s Statement of Facts ¶ 32.) Lumenite states that at the end of 1999, Ms. Jarvis was vested in $7,930.09 in her Plan account. (Pl.'s Statement of Facts ¶ 40.) This figure represents the $8,392.90 remaining after the May 1999 disbursement, minus $462.81 in investment losses for 1999. (Jarvis Dep. Ex. 8.) Thus, Lumenite claims that when it disbursed $22,270.64 in January 2000, it overpaid Ms. Jarvis by $14,340.55. (Jarvis Dep. Ex. 8.) Ms. Jarvis does not dispute that $22,270.64 was disbursed to her IRA in January 2000. (Def.'s Resp. to Pl.'s Statement of Facts ¶ 35.) She does, however, deny that at that time she was vested in only $7,930.09. (Def.'s Resp. to Pl.'s Statement of Facts ¶ 40.) Ms. Jarvis, through an expert report by William Zorc (Def.'s Rule 26(a)(2) Disclosures), argues essentially that the $462.81 loss allocated to her by Lumenite should not be borne by her. Ms. Jarvis is correct.

According to the Plan language, when a participant's employment is terminated not due to death, disability, or normal retirement, that participant is entitled to distribution of the vested portion of their benefits, "valued as of the Valuation Date coincident with or immediately preceding the date of Distribution." (Pl.'s Statement of Facts Ex. E4 at 39.). Under the Plan, the Valuation Date is the end of the calender year. (Pl.'s Statement of Facts Ex. E5 at 2, 5.) Thus, when Ms. Jarvis received a distribution in May 1999, she was entitled to her vested benefits as of December 31, 1998, which the parties agree was $22,270.64. That she received only $13,877.74 does not mean that she was not entitled at that time to the remaining $8,392.90 which she had requested. Ms. Jarvis should not bear the loss for this amount to which she was entitled while it remained in Lumenite's hands. Thus, in January 2000, she was still entitled to $8,392.90 and the payment of $22,270.64 represents an overpayment of $13,877.74, not $14,340.55 as Lumenite contends. As Ms. Jarvis presents no evidence contesting any other aspect of the overpayment except the $462.81 loss allocated to her,[4] the amount of the overpayment to

---

[4] The only argument Ms. Jarvis makes with respect to the amount of overpayment is to point to the reports of two experts, Mr. Zorc and Arthur Eubank. Mr. Zorc states, as noted above, that Ms. Jarvis should not be required to repay the 1999 loss allocated to her by the Plan. Mr. Zorc goes on to say, that if the Plan could or should have yielded different and higher rates of return, the amount Ms. Jarvis should not be required to return would be higher. Mr. Eubank's report indicates that, indeed, the Plan should have yielded higher returns. With respect to the amount of

which Lumenite may be entitled is $13,877.74.

## C. Restitution

To establish entitlement to restitution, Lumenite must demonstrate that:

> (1) [it] had a reasonable expectation of [re]payment, (2) [Ms. Jarvis] should reasonably have expected to [re]pay, or (3) society's reasonable expectations of person and property would be defeated by nonpayment.

*Harris Trust & Sav. Bank v. Provident Life & Accident Ins. Co.,* 57 F.3d 608, 615 (7th Cir. 1995) (citations omitted). Here, Lumenite argues that it had a reasonable expectation of repayment because the Plan explicitly "allows for the adjustment of Participant's Accounts based on distributions or withdrawals." (Pl.'s Statement of Facts ¶ 12). Assuming the Plan says this or something like it (I could not tell because Lumenite did not cite to a page number in the seventy-nine page plan document), this language does not create a reasonable expectation of repayment as explicitly as plans that courts have found in the past to have created such an expectation. *See Unum Life Ins. Co. of America v. Thoma,* No. 98 C 6287, 2000 WL 1036254, at *1, *2 (N.D. Ill. July 24, 2000) (Guzman, J.) (plan provided that "the insured promises to repay any overpayment caused by an award [of social security benefits]"); *Romero v. Alexander Chem. Employee Health Care Plan,* No. 98 C 239, 1999 WL 498638, at

---

the overpayment, hypothetical returns of the Plan are irrelevant. Ms. Jarvis was actually allocated $462.81 in loss. I have found that she is not required to repay that amount. It is irrelevant what that loss could or should have been.

*5 (N.D. Ill. July 2, 1999) (Plunkett, J.) (plan provided that "[i]f the amount of the payment made by This Plan is more than it should have paid, the Plan has the right to recover the excess from ... [t]he person This Plan has paid or for whom it has paid").

Similarly, Lumenite argues that Ms. Jarvis should reasonably have expected to repay Lumenite for overpayments because of the above-mentioned Plan language. Again, this language is insufficient to create reasonable expectations of repayment. Lumenite also argues that Ms. Jarvis admitted that she would repay any overpayment made to her, thus indicating that she reasonably expected to make such repayment. However, the record citations provided by Lumenite do not support such an inference.[5]

Regardless of whether either Lumenite or Ms. Jarvis had a reasonable expectation of repayment of any overpayments, however, society's reasonable expectations would be frustrated by allowing Ms. Jarvis to keep the overpayment here. The Seventh Circuit reads the third prong of *Harris Bank* as an inquiry into "the interests of society, as reflected in the goals of ERISA and efficient plan

---

[5] In its Reply brief in support of its motion for summary judgment and in opposition to Ms. Jarvis' cross-motion, Lumenite states that Ms. Jarvis "*admitted* that she would repay the overpayment if she felt that the overpayment was actually proven to her" (emphasis in original). The record citations Lumenite supplies simply reference Ms. Jarvis' statements that she needed documentation to determine whether there had been an overpayment. The cited record never indicates that Ms. Jarvis stated that even if she determined that there had been an overpayment that she would have repaid it.

administration." *Harris Bank*, 57 F.3d at 615-16. "Forcing ... a plan to pay benefits [that] are not part of the written terms of the program disrupts the actuarial balance of the Plan and potentially jeopardizes the pension rights of others legitimately entitled to receive them." *Cent. States, Southeast & Southwest Areas Health & Welfare Fund,* 53 F.3d 172, 175 (7th Cir. 1993) (reversing and remanding dismissal of action in which plan sought restitution of overpayment after clerical error resulted in $10,000 payment when only $100 owed). Allowing Ms. Jarvis to retain a mistaken overpayment would result in a reduction of assets available to other participants. *See Unum Life Ins. Co. v. Thoma,* No. 98 C 6287, 2000 WL 1036254, at *2 (N.D. Ill. July 24, 2000) (Guzman, J.) ("[Defendant's] failure to repay the overpayment would defeat society's reasonable expectation of person or property. Society's concerns include the possible reduction of available benefits to others insured with [plaintiff], the depletion of public resources, and the increase in private insurance costs."). Because society's reasonable expectations would be frustrated by not permitting recovery, Lumenite is entitled to restitution for the overpayment it mistakenly made to Ms. Jarvis, subject to any equitable defenses.

## D. Equitable Defenses

Ms. Jarvis raises two equitable defenses, laches and estoppel. Laches requires a showing of (1) unreasonable delay, and (2) harm

or prejudice to the defendant. *Martin v. Consultants & Adm'rs, Inc.,* 966 F.2d 1078, 1091 (7th Cir. 1992). Ms. Jarvis argues that Lumenite was put on notice that there was an issue regarding the amount of her benefits in April 1999 when she sent a letter to Lumenite requesting "the current amount of [her] profit sharing." (Jarvis Dep. Ex. 15.) She states that waiting until October 2000 to contact her about the overpayment constitutes unreasonable delay, and that she was harmed by this delay because she incurred taxes and penalties when she cashed out her IRA in August 2000. While Lumenite did not discover the discrepancy in Ms. Jarvis' account until September 2000, following that discovery, it promptly requested repayment from Ms. Jarvis in October 2000.[6] This does not constitute unreasonable delay for purposes of laches. *See Kraft Foods, Inc. Supplemental Benefits Plan I v. Woods,* No. 98 C 7794, 1999 WL 1069247, at *5 (N.D. Ill. Nov. 19, 1999) (Leinenweber, J.) ("[T]he court finds that the plaintiffs did not unreasonably delay in alerting [the defendants] because the plaintiffs notified [the defendants] *as soon as the plaintiffs determined that [the defendants] had been overpaid.*") (emphasis added). *See Wells v. U.S. Steel & Carnegie Pension Fund, Inc.,* 950

---

[6] Lumenite sent a letter to Ms. Jarvis dated September 27, 2000 requesting return of the overpayment. Ms. Jarvis states that she did not receive this letter until late November or early December 2000. (Def.'s Resp. to Pl.'s Statement of Facts ¶ 45.) Regardless, Ms. Jarvis admits that she was contacted by Lumenite by phone in October 2000 requesting repayment. (Def.'s Resp. to Pl.'s Statement of Facts ¶ 46.)

F.2d 1244, 1250 (6th Cir. 1991) ("laches focuses on the inexcusable delay 'after possession of the knowledge of the facts.'"). Because Lumenite did not unreasonably delay notifying Ms. Jarvis of the overpayment, any prejudice or harm to her is irrelevant. Ms. Jarvis' defense of laches fails.

Ms. Jarvis also raises the equitable defense of estoppel. Estoppel requires "(1) a knowing representation, (2) made in writing, (3) with reasonable reliance on that misrepresentation by [the party claiming estoppel], (4) to her detriment." *Trustmark Life Ins. Co. v. Univ. of Chicago Hosps.,* 207 F.3d 876, 883 (7th Cir. 2000). When all four of these elements are present, the misrepresentation will be enforced to avoid injustice. *Id.* Ms. Jarvis states that after repeatedly inquiring about the amount of benefits she was due, she reasonably relied on Lumenite's calculation that she was entitled to the January 2000 distribution of $22,270.64. Ms. Jarvis states that she relied on Lumenite's calculation to her detriment because she cashed out the IRA into which the disbursement was made, incurring over $10,000 in taxes and penalties. Assuming, *arguendo*, that the four elements of estoppel are met here, holding Lumenite to its mistaken calculation of Ms. Jarvis' benefits would not avoid injustice. To the contrary, it would further it.

In determining whether an employer is entitled to a refund of payments in a restitution claim, the Seventh Circuit has stated

13

several factors that should be considered:

> (1) were the unauthorized contributions the sort of mistaken payments that equity demands be refunded, *i.e.*, was it a good faith mistake or the result of unauthorized activity? (2) has the employer delayed in bringing the action? (3) has the employer somehow ratified past payments? (4) can the employer demonstrate that the party from whom it seeks payment would be unjustly enriched if recovery were denied?

*Id.* Here, all four factors weigh in Lumenite's favor. First, the overpayment was the result of a good faith mistake. Lumenite simply miscalculated the amount of benefits to which Ms. Jarvis was entitled when it made the January 2000 distribution. While there exists a dispute now as to the amount of the overpayment, there is no allegation that it was made as a result of any unauthorized activity. Second, as discussed above, Lumenite did not unduly delay in seeking repayment. *See Kraft Foods*, 1999 WL 1069247 at *4-5 (treating this inquiry the same as laches inquiry). Third, there is no indication or allegation that Lumenite ratified the overpayment. Finally, Ms. Jarvis would be unjustly enriched by allowing her to retain overpaid benefits to which she was not entitled. In *Trustmark*, the Seventh Circuit found that defendants had not been unjustly enriched by payments from an employee benefits plan. In that case, the plan was seeking to recover payments it had made to defendant health care providers for providing services to a plan beneficiary that the plan felt were not medically necessary. The court held that the defendants were not unjustly enriched because they had an honest claim to money

14

that constituted the market rate for the services they had provided. Here, in contrast, Ms. Jarvis has no honest claim to the money that was mistakenly overpaid to her. She provided no benefit to Lumenite that would justify a claim to such an overpayment; it would simply be a windfall to her. Thus, application of estoppel here is unwarranted. Because Ms. Jarvis fails to establish that Lumenite is not entitled to restitution of the overpayment, she cannot prevail on her motion for summary judgment on Lumenite's complaint.

## II. Jarvis Counterclaim Count II

Ms. Jarvis seeks summary judgment on count II of her counterclaim. This count seeks an award of statutory penalties for Lumenite's failure to comply with various disclosure and reporting requirements of ERISA. A plan administrator who fails or refuses to comply with a request for any information that the administrator is required to provide can be liable to a plan participant for up to $100/day. 29 U.S.C. § 1132(c)(1)(B). Ms. Jarvis contends that Lumenite failed to provide a summary plan description and summary annual reports as required by 29 U.S.C. § 1024(b). Ms. Jarvis also contends that Lumenite failed to adequately respond to her written requests for account information in violation of 29 U.S.C. § 1025(a), which states that

> Each administrator of an employee pension benefit plan shall furnish to any plan participant or beneficiary who so requests in writing, a statement indicating, on the basis of the latest available information-

(1) the total benefits accrued, and
(2) the nonforfeitable pension benefits, if any, which have accrued, or the earliest date on which benefits will become nonforfeitable.

Ms. Jarvis states that she requested information from Lumenite three times. In April 1999, she wrote a letter stating: "I am in need of a statement showing the current amount of my profit sharing. I am in the process of opening an IRA account and need this information to make some financial decisions." (Jarvis Dep. Ex. 15.) Lumenite states that it responded by returning Ms. Jarvis' letter on which Carol Calabrese, a Lumenite employee, had written "[t]his is our most recent number!" and attached a copy of Ms. Jarvis' 1997 personal account statement. (Pl.'s Resp. to Def.'s Statement of Facts ¶ 157.) The personal account statement lists Ms. Jarvis' account balance on January 1, contributions and investment gains and losses for the year, the year-end balance, and the amount and percentage in which Ms. Jarvis was vested. Ms. Jarvis admits receiving her letter back with the handwritten comment, but does not recall whether anything else was included or attached. (Jarvis Dep. at 79.)

In June 1999, Ms. Jarvis wrote a second letter, stating in relevant part: "I request that you supply me with an updated statement that represents my total vested interest and remaining balance in the plan." (Jarvis Dep. Ex. 17.) This letter was returned by Lumenite to Ms. Jarvis with a handwritten note reading: "As of 6/11/99, we have no figures for anyone that covers the

16

amount for 1998.  When we have them, you'll know."  (Def.'s
Statement of Facts ¶ 182.)  Ms. Jarvis admits receiving this
response.  (Jarvis Dep. at 99-100.)

Finally, at some point after the June 1999 letter, Ms. Jarvis
sent a third letter, reading in its entirety: "Is there any news on
the profit sharing numbers for 1998 yet???  I would appreciate Any
information you can give me."  (Jarvis Dep. Ex. 19.)  Ms. Jarvis
recieved this letter back with a handwritten note reading "Still
none."  (Jarvis Dep. at 108-09; Ex. 19.)

With respect to the account statement requirement of
§ 1025(a), Lumenite presents evidence that it satisfied the
statutory requirements by attaching a copy of Ms. Jarvis' 1997
personal account statement to her April 1999 letter, stating that
those were the most recent figures that it had.  The statement
indicated the total benefits accrued in Ms. Jarvis' account and the
total vested benefits accrued.  Ms. Jarvis argues that because
§ 1025(a) requires account statements to be based on "the latest
available information," Lumenite should have created an updated
account statement in response to her April 1999 letter, instead of
relying on the 1997 statement.  In support, she cites *Jackson v.
E.J. Brach Corp.,* 937 F. Supp. 735 (N.D. Ill. 1996).  In that case,
Judge Moran refused to distinguish between a failure to provide
requested documents in existence, and a failure to provide
requested documents not in existence.  *Id.* at 739-40.  If there

were such a distinction, "it would be too easy for a plan administrator to avoid [§ 1132(c)] penalties by failing to maintain documents or by destroying them when a participant makes a written request." *Id.* at 740. While I agree that the reporting provisions of ERISA require maintaining updated information, I do not agree that the account statement allegedly provided to Ms. Jarvis in April 1999 was out of date.

Lumenite states that the personal account statements are prepared by an outside firm, and that the statements are distributed in the December following the close of the account year. (C. Calabrese Dep. at 129.) Thus, Ms. Jarvis' 1997 account statement would not have been distributed until December 1998, and was therefore current in April 1999. *See* 29 U.S.C. § 1025(b) ("In no case shall a participant or beneficiary be entitled under this section to receive more than one report described in subsection (a) of this section during any one 12-month period.").

Ms. Jarvis argues that Lumenite had received 1998 account information as early as January 1999 (Def.'s Statement of Facts ¶ 104), and that it would take Lumenite at most two weeks to compile the information to forward to the outside firm that prepares the personal account statements (Def.'s Statement of Facts ¶ 108). Thus, argues Ms. Jarvis, Lumenite could easily have had an updated personal account statement created based on 1998 information. While the record indicates that Lumenite may have

received 1998 information from one investment source in January 1999 (O'Brien Dep. at 22-23), Lumenite has about 8-10 investment sources from which it receives account statements (Meixner Dep. at 45). Lumenite's accountant testified that he generally receives all statements for the end of the previous year by May or June. (Meixner Dep. at 56.) Ms. Jarvis fails to show that Lumenite had *all* the information it needed to have a 1998 personal account statement generated for Ms. Jarvis when she requested information in 1999, and thus she fails to show that the 1997 statement she was allegedly provided was not based on the latest available information.

In addition to the personal account statements, Ms. Jarvis contends that Lumenite failed to provide a summary plan description and summary annual reports as required by § 1024(b). Section 1132(c), on which count II of Ms. Jarvis' counterclaim is premised, provides statutory penalties for failure or refusal "to comply with a request" for information required under ERISA. Here, while Ms. Jarvis' letters may have been requests for information regarding her personal account statements, they cannot be read as requests for summary plan descriptions or summary annual reports. Thus, Lumenite is not liable for statutory penalties under § 1132(c) for failing to provide that information. *Cf. Balzanto v. Nicholas Cuda, Ltd. Profit Sharing Plan,* No. 01 C 294, 2002 WL 63519, at *3 (N.D. Ill. Jan. 17, 2002) (Kocoras, J.) (holding that requests for

statement of accrued benefits fell under § 1025(a), and did not put Plan on "clear notice" that participant was requesting documents of the type covered by § 1024(b)).

Ms. Jarvis also references two additional letters she sent requesting information made in late 2000 or early 2001. (Def.'s Statement of Facts ¶¶ 195, 197.) In one of these letters, she requested "tax reporting documentation" from the Plan (Jarvis Dep. at 116-17, Ex. 20), and in the other, she requested "information related to the reporting of [her] profit sharing activity to government and regulatory authorities" (Jarvis Dep. Ex. 21). Neither of these letters request information required to be disclosed under §§ 1024 or 1025, *see Ames v. Am. Nat'l Can Co.,* 170 F.3d 751, 758-59 (7th Cir. 1999) (catch-all provision of § 1024(b)(4) requiring disclosure of "other instruments" covers only "formal legal documents governing a plan"). Because Lumenite presents evidence that it complied with Ms. Jarvis' request for information regarding her personal account statement as required by § 1025, and because Ms. Jarvis does not present sufficient evidence of requests for other information covered by §§ 1024 or 1025, Ms. Jarvis' motion for summary judgement on count II of her counterclaim is denied.

III.  Jarvis Counterclaim Count III

Both Ms. Jarvis and Lumenite seek summary judgment on count III of Ms. Jarvis' counterclaim. This count alleges that Lumenite

breached its fiduciary duties to Jarvis by failing to provide required information as outlined above. Ms. Jarvis also claims that Lumenite breached its fiduciary duties by not following accepted portfolio management techniques. Ms. Jarvis does not make clear under which provision of ERISA she brings count III of her counterclaim. She relies on *Panaras v. Liquid Carbonic Industries, Corp.,* 74 F.3d 786 (7th Cir. 1996) for the proposition that plan beneficiaries can seek recovery for disclosure violations in addition to the statutory penalties discussed above. She relies on *Varity Corp. v. Howe,* 516 U.S. 489 (1996) for the proposition that beneficiaries can seek recovery for other kinds of breaches of fiduciary duty.

*Panaras* was a case brought under § 1132(a)(1)(B), which allows a participant to recover benefits due to her under the terms of the plan. 74 F.3d at 789. Ms. Jarvis cannot proceed under this section because she is not seeking to recover benefits, she is seeking (non-restitutionary) money damages. *Varity Corp.* was a case brought under § 1132(a)(3), which allows a participant to bring suit to enjoin any act or practice that violates ERISA or terms of the plan or to obtain other equitable relief. 516 U.S. at 507. As discussed above, however, this section is not available to parties seeking only legal money damages as opposed to equitable relief. *Mertens,* 508 U.S. at 256. Again, Ms. Jarvis cannot

proceed under this section because count III is not seeking equitable relief.

The only other section under which Ms. Jarvis could potentially proceed is § 1132(a)(2), which allows a participant to bring suit for appropriate relief under § 1109. Section 1109 imposes liability on plan fiduciaries for breach of fiduciary duty. The Supreme Court has made clear, however, that recovery under § 1109 inures to the benefit of a plan as a whole, not to individual participants. *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 140 (1985). Thus, a participant can bring suit for relief under § 1109 (through § 1132(a)(2)) only "in a representative capacity on behalf of the plan as a whole" *Id.* at 142 n.9. Section 1109 does not authorize an award of damages to individual plan participants. *Id.* at 144.

Ms. Jarvis therefore provides no basis on which she may proceed with a claim for money damages against Lumenite for a breach of fiduciary duty under ERISA. As a result, Lumenite is entitled to summary judgment on count III of Ms. Jarvis' counterclaim.[7]

---

[7] Although the main purpose for which Mr. Eubank's expert report was apparently proffered was to contest the amount of overpayment in conjunction with Mr. Zorc's report, Lumenite expressed concern that Ms. Jarvis would seek to use Mr. Eubank's report in connection with the fiduciary duty count of her counterclaim. As summary judgment on this count is granted in Lumenite's favor, it's concerns regarding Mr. Eubank's report in this context are moot.

## IV. Attorneys' Fees

Both sides spend considerable time in their briefs discussing their entitlement to attorneys' fees and costs. As there are still issues to be decided in this case, I will delay any decision on fees and costs pending a more complete resolution of this case. *Cf.* Charles Alan Wright et al., Federal Practice and Procedure § 2667 (3d ed. 1998) ("[A] determination of who is the prevailing party . . . should not depend on the position of the parties at each stage of the litigation but should be made when the controversy is finally decided.").

## V. Conclusion

Because Lumenite is entitled to restitution in the amount of $13,877.74 if it can trace those proceeds to Ms. Jarvis' house, Ms. Jarvis' motion for summary judgment on Lumenite's complaint is DENIED. However, because there exists a genuine issue of material fact as to the traceability of those funds, Lumenite's motion for summary judgment on its complaint is also DENIED.

Second, because she fails to show that Lumenite did not comply with her requests for personal account information under § 1025 and fails to present sufficient evidence of requests for other information covered by §§ 1024 or 1025, Ms. Jarvis' motion for summary judgment on count II of her counterclaim is DENIED. Additionally, because Ms. Jarvis provides no basis on which she may proceed with a claim for money damages against Lumenite for a

breach of fiduciary duty under ERISA, Lumenite's motion for summary judgment on count III of Ms. Jarvis' counterclaim is GRANTED and Ms. Jarvis' cross-motion for summary judgment on count III of her counterclaim is DENIED.

Finally, because the expert report of Mr. Eubank is irrelevant to a determination of the amount of overpayment, and the issue of whether the report may be presented as part of Ms. Jarvis' breach of fiduciary counterclaim is moot, Lumenite's motion *in limine* to exclude evidence from Mr. Eubank is GRANTED.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated:      March 25, 2003

24